**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, *dba* Country Insurance and Financial Services, Inc., an Indiana corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>RONALD PITTMAN, an individual,<br><br>            Defendant. | No. 03:11-CV-00806-HU<br><br>**MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

_____

John A. Bennett
Stephen F. Deatherage
Andrew E. Passmore
BULLIVANT HOUSER BAILEY PC
888 SW Fifth Avenue, Suite 300
Portland, OR 97204-2089

       Attorneys for Plaintiff

Laura N. Althouse
Richard A. Lee
BODYFELT MOUNT LLP
707 SW Washington Street, Suite 1100
Portland, OR 97205-3528

       Attorneys for Defendant

1 - MEMORANDUM OPINION AND ORDER

HUBEL, Magistrate Judge:

This matter is before the court on the parties' motions for summary judgment.  For the reasons discussed below, the plaintiff's motion (Dkt. #18) is **denied**, and the defendant's motion (Dkt. #21) is **granted in part and denied in part**.

### *SUMMARY JUDGMENT STANDARDS*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002) (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548.  Where the moving party meets that burden, the burden then shifts to the non-moving party to desig-nate specific facts demonstrating the exis-tence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The non-moving party must do

2 - MEMORANDUM OPINION AND ORDER

more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S. Ct. 2505.

*In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).

### *BACKGROUND FACTS*

The plaintiff Country Mutual Insurance Company ("Country") is part of a group of "personal lines insurance companies" that distributes various types of insurance products to "farmers, individuals and small businesses."[1] From January 1, 1993, until he retired on September 30, 2005, the defendant Ronald Pittman was a registered insurance agent for Country, doing business in McMinnville, Oregon.[2] This case arises from a lawsuit filed against Country and Pittman by an individual named John Stuart (the "Stuart case").

At oral argument on the pending motions, the parties clarified the history of the Stuart case. In March 2003, Stuart bought property in Yamhill County, Oregon, on which he planned to build a

---

[1]Dkt. #23-1, Agent's Agreement, ¶ 1.

[2]Dkt. #9, Amended Complaint ¶ 6; admitted by Pittman at Dkt. #12, ¶ 1.

3 - MEMORANDUM OPINION AND ORDER

home.   Stuart owned an existing residence, and Country issued a homeowner's policy (which Pittman's attorney referred to as an "ag plus policy") to Stuart to cover the existing residence.   At some point, Stuart met with Pittman to discuss insurance for the new residence he planned to build.   As the attorneys described the facts during oral argument on the current motions, the "new" policy was not to be an entirely new insurance policy at all, but rather was to be an amendment or rider to Stuart's existing "ag plus" policy covering Stuart's existing residence.   During their discussions, Stuart outlined the types of coverage he wanted, and Pittman made certain representations regarding what was available.   In Stuart's Complaint in the Stuart case, he alleged Pittman provided him with an oral binder for insurance that would cover "any and all claims arising out of the course of construction of [the new residence], including 'Acts of God.'"[3]   According to Stuart, Country issued a "Builder's Risk or course of construction policy" (as Country refers to it[4]) that did not contain the "course of construction" terms Stuart had requested.[5]   In particular, the policy Country issued to Stuart excluded "the perils of faulty workmanship, mold, and damage caused by water backup from sewer drains."[6]   Stuart claims he was never provided with a copy of the insurance policy, despite several requests for a copy of the

_____

[3]Dkt. #23-7, Stuart Complaint, ¶ 8.

[4]*See* Dkt. #19, p. 2.

[5]Dkt. #23-7, Stuart Complaint, ¶ 9.

[6]Dkt. #9, Amended Complaint, ¶ 17; admitted by Pittman at Dkt. #12, ¶ 1.

4 - MEMORANDUM OPINION AND ORDER

Declarations page, and despite Pittman's assurance, in January 2004, "that a written binder for the Policy was forthcoming."[7]

In January or February 2004, the home being built for Stuart suffered damage when it "was left open to the weather, and as a result, the interior sheathing split, water accumulated in the crawl space, and mold grew."[8]  Stuart timely reported the loss to Country.  In the present case, Country alleges "Pittman told Stuart that the damage caused by the weather would be covered and the mold damage also might be covered."[9]  According to Stuart, a field underwriter for Country inspected the damage in March 2004, before any repairs were made, and Stuart "was advised to chronicle the repairs and to submit his claim in writing after repairs were complete."[10]  Based on the exclusions contained in the policy issued by Country, it ultimately denied Stuart's claim.[11]

Stuart obtained judgments against the architect/builder for the damage to the residence under construction; however, it appears the architect was insolvent and unable to satisfy the judgments.[12]  Stuart filed suit against Country and Pittman in Yamhill County

---

[7]Dkt. #23-7, Stuart Complaint, ¶¶ 10 & 11.

[8]Dkt. #9, Amended Complaint ¶ 15; admitted by Pittman at Dkt. #12, ¶ 1; *see* Dkt. #23-7, Stuart Complaint, ¶ 13.

[9]Dkt. #9, Amended Complaint, ¶ 16; denied by Pittman at Dkt. #12, ¶ 2.

[10]Dkt. #23-7, Stuart Complaint, ¶ 14.

[11]Dkt. #9, ¶ 17; admitted by Pittman at Dkt. #12, ¶ 1; *cf*. Dkt. #23-4, letter dated March 7, 2005, from John Bennett to Arden Olson.

[12]*See* Dkt. #23-7, Stuart Complaint, ¶¶ 15-26, 29; Dkt. #23-15, Country's Motion for Summary Judgment in the Stuart case, p. 3.

5 - MEMORANDUM OPINION AND ORDER

Circuit Court (the "trial court"), asserting claims against Country for breach of contract, negligent misrepresentation, and attorney's fees; and a claim against both Country and Pittman for negligent failure to procure insurance.[13]

Pittman moved for summary judgment in the Stuart case, and his motion was granted.[14]    Country also moved for summary judgment on

───────────────────

[13]*See* Dkt. #23-14, Stuart's First Amended Complaint.

[14]*See* Dkt. #23-8, a one-sentence order dated November 6, 2006, granting Pittman's motion for summary judgment in the Stuart case. In Oregon, a negligence claim (including a claim for negligent misrepresentation) that seeks only economic damages "must be predicated on some duty of the negligent actor to the injured party beyond the common-law duty to exercise reasonable care to prevent foreseeable harm." *Lewis-Williamson v. Grange Mut. Ins. Co.*, 179 Or. App. 491, 494, 39 P.3d 947, 949 (2002) (citing *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 159, 843 P.2d 890, 896 (1992)); *accord Miller v. Mill Creek Homes, Inc.*, 195 Or. App. 310, 315, 97 P.3d 687, 689 (2004).   The issue of whether a particular relationship is one that gives rise to such an enhanced duty is a question of law, to be decided on a case-by-case basis. *Lewis-Williamson*, 179 Or. App. at 495, 39 P.3d at 949 (citations omitted).   In *Lewis-Williamson*, the court held that a "captive" insurance agent is viewed as an agent of the insurance company and not of the insured (contrasted with the case of an independent insurance agent, who generally "is viewed as an agent of the insured and owes a duty of reasonable care to the principal insured").   Therefore, a captive agent lacks the type of special relationship that can give rise to liability to the insured based on negligence in the context of purely economic loss. *Id.*, 179 Or. App. at 495-96, 39 P.3d at 949-50; *accord Miller, supra*.
According to Country, Pittman was dismissed from the Stuart case on summary judgment because he "was Country Mutual's captive agent and had no 'special relationship' with Stuart." Dkt. #19, p. 2 n.1; *see* Dkt. #9, Amended Complaint, ¶ 18.   In his Answer in the present case, Pittman denies the allegation that he was dismissed from the Stuart case on that basis, Dkt. #12, ¶ 5; however, in a Tolling Agreement between Pittman and Country, dated December 3, 2007, the parties agreed "Pittman was granted summary
(continued...)

6 - MEMORANDUM OPINION AND ORDER

Stuart's claims.[15]   The parties explained at oral argument that Country was granted summary judgment on Stuart's negligent misrepresentation claim against Country.  In a Second Amended Complaint, Stuart asserted claims against Country for breach of contract and attorney's fees.[16]

The case was tried to a jury, which found: (1) Pittman "entered into an oral contract of insurance different than the policy later issued by Country Mutual"; (2) the oral insurance contract eliminated the requirement of direct physical loss, and the exclusions for damage caused by mold, water (whether or not backed up through drains), and "faulty workmanship or construction"; (3) Country's "failure to provide insurance coverage consistent with the oral contract of insurance" damaged Stuart; (4) and Country failed "to mail or deliver the policy within a reasonable time," which also damaged Stuart.[17]   The jury awarded Stuart $268,417.00 in damages, and the trial court awarded Stuart $168,035.91 in attorney's fees.  These awards were memorialized in,

---

[14](...continued)
judgment . . . because [he] did not have the type of special relationship with Stuart necessary for tort liability."  Dkt. #23-12, p. 1.

[15]*See* Dkt. ##23-15, 23-16, & 23-17.

[16]*Id.*, ¶¶ 31-36.  After Pittman's motion for summary judgment was granted, the parties stipulated to dismissal of Pittman with prejudice in exchange for Pittman's waiver of any costs in the Stuart case.  *See* Dkt. #23-9.  As a result, Stuart omitted any claims against Pittman in his Second Amended Complaint.  *See* Dkt. #20-6, General Judgment in the Stuart case.

[17]Dkt. #20-5, Verdict Form in the Stuart case.

7 - MEMORANDUM OPINION AND ORDER

respectively, a General Judgment entered December 4, 2006, and a Supplemental Judgment dated May 29, 2007.[18]

Country appealed.  Country and Pittman entered into a Tolling Agreement, effective December 3, 2007 (notably, as will be seen, one day short of one year after judgment was entered), for the purpose of "stop[ping] the passing of time, as to any contractual or statutory period of limitation applicable to Country Mutual's proposed claims against Pittman, . . . until 30 days after the final decision and mandate of the appellate courts[.]"[19]

On May 5, 2010, the Oregon Court of Appeals reversed, finding there was "no evidence from which the jury could find that [Country's] agent bound terms that clearly and expressly superseded the usual terms of a course of construction policy or that [Stuart] was damaged as a result of [Country's] failure to timely deliver the policy," and therefore it was error for the trial court to submit the case to the jury.[20]  The Court of Appeals based its decision on ORS § 742.043(1), which provides that an oral binder for insurance is "'deemed to include all the usual terms of the policy as to which the binder was given . . ., except as superseded by the clear and express terms of the binder.'"[21]  The court noted

_____

[18]*See* Dkt. #20-6, General Judgment, signed November 30, 2006, and filed December 4, 2006; Dkt. #20-7, Supplemental Judgment, signed and filed May 29, 2007.

[19]Dkt. #23-12, Tolling Agreement, p. 1.

[20]*Stuart v. Pittman*, 235 Or. App. 196, 207, 230 P.3d 958, 964 (2010), *rev'd* 255 P.3d 482 (Or. 2011).

[21]*Id.*, 235 Or. App. at 202, 230 P.3d at 962 (quoting ORS § 742.043(1)).

8 - MEMORANDUM OPINION AND ORDER

1   the statute creates "a presumption that a binder includes those

2   terms that are usually contained in the policy for which the binder

3   was issued."[22]   The court reviewed the evidence presented at trial

4   and concluded it was "simply too vague and obscure" to show Pittman

5   had clearly and expressly "modified or waived the terms of the

6   'usual' course of construction policy or its exclusions from

7   property coverage for faulty work, water damage, and mold."[23]

8       The Oregon Supreme Court allowed review[24], and on June 3, 2011,

9   that court reversed the decision of the Oregon Court of Appeals.

10   The Oregon Supreme Court found the evidence was sufficient for the

11   trial court to submit the issues in the case to the jury for

12   decision, and further, the trial court did not err in its attor-

13   ney's fee award.[25]   The Oregon Supreme Court also granted Stuart

14   appellate attorney's fees in the amount of $201,288.50, and costs

15   of $682.77.[26]   According to Country, it paid $819,738.62 to Stuart

16   on September 15, 2011, $180,738.62 of which "was post-judgment

17   interest at nine percent per year."[27]   The Oregon Supreme Court

18   entered its appellate judgment on October 6, 2011.[28]

19

20       [22]*Id.* (citations omitted).

21

22       [23]*Id.*, 235 Or. App. at 204-05, 230 P.3d at 963.

23       [24]*Stuart v. Pittman*, 349 Or. 173, 243 P.3d 468 (Table) (2010).

24       [25]*Stuart v. Pittman*, 350 Or. 410, 255 P.3d 482 (2011).

25       [26]*See* Dkt. #9, Amended Complaint, ¶ 22; admitted by Pittman at
      Dkt. #12, ¶ 7 (although Pittman indicates the costs allowed by the

26   Oregon Supreme Court were in the amount of $882.77).

27       [27]Dkt. #19, p. 2; Dkt. #9, ¶ 22.

28       [28]Dkt. #9, ¶ 22; admitted by Pittman at Dkt. #12, ¶ 7.

9 - MEMORANDUM OPINION AND ORDER

Country filed the current action against Pittman in this court on July 1, 2011. Country asserts claims against Pittman for negligence, common-law indemnity, and "breach of duty as agent."[29] Both parties now seek summary judgment.

Preliminarily, the court notes Pittman has moved, "[i]n the alternative, . . . for partial summary judgment on Country's common law indemnity claim[.]"[30] Country concedes Pittman cannot be liable for common-law indemnity because he was dismissed from the Stuart case.[31] Accordingly, Pittman's motion for summary judgment on Country's Second Cause of Action for common-law indemnity is **granted.**

In Pittman's motion for summary judgment, he argues Country cannot maintain this action on procedural grounds. Country, on the other hand, argues it is entitled to partial summary judgment on the merits of its negligence claim against Pittman. I will address Pittman's procedural motion first.

### *PITTMAN'S MOTION FOR SUMMARY JUDGMENT*

Pittman argues Country's claims in this case are barred by an arbitration clause contained in the Agent's Agreement entered into by the parties. Section 2 of the Agent's Agreement contains the parties' "Mutual Agreements," subparagraph k of which provides as follows:

---

[29]Dkt. #9, Amended Complaint.

[30]Dkt. #22, p. 3.

[31]Dkt. #27, p. 11.

10 - MEMORANDUM OPINION AND ORDER

It is mutually agreed . . . [t]hat any claim or controversy relating to or arising out of the relationship between the Agent and [Country], this Agreement (and/or any agreement superseded by this Agreement), or the termination of this Agreement, whether the parties' rights and remedies are governed or created by contract law, tort law, common law or other wise [sic], or by federal, state or local statute, legislation, rule or regulations, shall be resolved exclusively by binding arbitration in Bloomington, Illinois (unless otherwise provided by law), by one arbitrator selected by [Country] and the Agent, all in accordance with the commercial arbitration rules of the American Arbitration Association then in effect. Judgment upon any arbitration award lawfully rendered may be entered and enforced in any court having jurisdiction. **Any claim governed by this arbitration clause must be brought within one year of the events giving rise to the claim or controversy** by serving on the other party within such time a written request for arbitration stating the grounds for the claim and the relief requested.[32]

Pittman asserts the arbitration clause applies to Country's claims against him in this case because those claims arise out of the parties' contractual relationship.[33] Country does not dispute this common-sense conclusion,[34] and the court finds the arbitration clause is applicable to Country's claims against Pittman in this case.

Pittman argues Country failed to make a demand for arbitration within the one-year limitations period specified in the arbitration clause. The parties' disagreement centers on interpretation of the language requiring a claim to be brought within one year of "the

---

[32]Dkt. #23-1, Agent's Agreement, p. 3, § 2(k) (emphasis added).

[33]Dkt. #22, p. 7.

[34]*See* Dkt. #27.

11 - MEMORANDUM OPINION AND ORDER

events giving rise to the claim or controversy." Pittman argues the phrase "events giving rise to the claim" in the arbitration clause differs from "the accrual of the claim." He notes that in a statute-of-limitations context, Oregon applies a "discovery rule," such that a plaintiff must actually be aware, or reasonably should be aware, of the elements of a claim before the limitation period begins to run. Under this type of analysis, Pittman argues Country was aware it had a claim against him at least by the date of the jury's verdict in the Stuart case - November 17, 2006 - if not much earlier, but Country did not make its written request for arbitration pursuant to the Agent's Agreement until November 4, 2011.

Pittman goes further, asserting that the "events giving rise to the claim" actually occurred even earlier. Pittman claims a plausible interpretation of the arbitration clause would require Country to demand arbitration "within one year of the alleged oral binder to Stuart and some damage to Country - which would have been when Country started to incur attorney fees to defend this claim - by March 2005 or at least by the time Stuart's lawsuit was filed on December 9, 2005."[35]

Country argues the "event" giving rise to its claim was the Oregon Supreme Court's issuance of a final judgment in the Stuart case. It argues that until then, it did not suffer "damage," and therefore, there was no "claim."[36] In the alternative, Country argues it first suffered damage on December 4, 2006, when judgment

---

[35]Dkt. #34, p. 4.

[36]Dkt. #27, pp. 2-3.

12 - MEMORANDUM OPINION AND ORDER

was entered against it in the Stuart case.  Country notes that the issue of whether Pittman bound the coverage alleged by Stuart was vigorously disputed by Country both during the course of the Stuart case in the trial court, and on appeal, with the jury agreeing with Stuart, the Oregon Court of Appeals reversing, and the Oregon Supreme Court reinstating the jury's verdict.  Thus, Country argues, the earliest date on which it even possibly could have been damaged for purposes of starting the limitations clock was when the original judgment was entered on December 4, 2006, memorializing the jury's finding that Pittman orally bound insurance different from the policy actually issued by Country.[37]  A day less than one year later, the parties entered into the tolling agreement that stopped the clock until 30 days after the final appellate judgment was issued.  The Oregon Supreme Court's judgment was issued on October 6, 2011, and Country made written demand for arbitration on November 4, 2011.[38] Country argues, therefore, that its arbitration demand was timely.

Pittman maintains that because Country drafted the arbitration clause at issue, the court cannot rule in Country's favor without concluding that Country's interpretation of the "events giving rise

---

[37]*Id.*, pp. 7-8.

[38]*See* Dkt. #20-11, letter from Country's attorney to Pittman's attorney making "written request for arbitration."  (The letter also notes the parties mutually agreed not to arbitrate the case, and Country was making the written request "only . . . in order to satisfy the arbitration demand requirement in the Agent's Agreement - assuming that it applies.")

13 - MEMORANDUM OPINION AND ORDER

to the claim" language is the *only* plausible interpretation.[39] Pittman further asserts that if the "events giving rise to" language is ambiguous, then his interpretation must prevail, again because Country drafted the contract language.[40]

## *DISCUSSION*

The parties' disagreement centers on the language requiring any claims arising under the Agent's Agreement to "be brought within one year of the events giving rise to the claim or controversy. . . ." In considering how this language should be interpreted, the court is guided by general principles of Oregon law regarding the construction of a contract. In construing a contract, the "court's goal is to give effect to the intention of the contracting parties." *Hoyt Street Properties, LLC v. Burling-ton N. & Santa Fe Ry. Co.*, 38 F. Supp. 2d 1185, 1191 (D. Or. 1999) (Ashmankas, J.) (citations omitted). Generally, under Oregon law, the construction of a contract "is a question of law for the court." *Id.* (citing *Anderson v. Divito*, 138 Or. App. 272, 277, 908 P.2d 315, 320 (1995), in turn citing *Timberline Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, 281 Or. 639, 643, 576 P.2d 1244, 1246 (1978)).

Oregon courts follow a three-step inquiry in contract inter-pretation. *Id.* (citing *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997)). The first step is to analyze the disputed

---

[39]Dkt. #22, p. 7 (citing *Hoffman Const. Co. v. Fred S. James Co.*, 313 Or. 464, 470-71, 836 P.2d 703, 706-07 (1992)).

[40]*Id.*

14 - MEMORANDUM OPINION AND ORDER

provision's text, in the context of the contract as a whole, to determine whether the meaning of the provision is clear on its face. If the meaning is clear, then the court construes the disputed terms as a matter of law. *Madson v. Western Or. Conf. Ass'n of Seventh-Day Adventists*, 209 Or. App. 380, 383, 149 P.3d 217, 218-19 (2006) (citing *Yogman*, *supra*).

In determining whether contract language is clear on its face, the court considers whether the disputed provision is ambiguous. "Whether terms of a contract are ambiguous is a question of law." *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997). Contract language is ambiguous "if it is susceptible to more than one *reasonable* interpretation," *Madson*, 209 Or. App. at 384, 149 P.3d at 219 (emphasis added) (citing *Batzer Constr., Inc. v. Boyer*, 204 Or. App. 309, 313, 129 P.3d 773, 776 (2006)), or if it "is capable of more than one sensible and reasonable interpretation[.]" *Deerfield Commodities v. Nerco, Inc.*, 72 Or. App. 305, 317, 696 P.2d 1096, 1104-05 (1985); *accord Batzer Constr., Inc. v. Boyer*, 204 Or. App. 309, 313, 129 P.3d 773, 776 (2006).

If the contractual provision at issue is ambiguous, then the court proceeds to the second step of the interpretation analysis; i.e., examination of extrinsic evidence of the parties' intent. *See Yogman v. Parrott*, 325 Or. 358, 363, 937 P.2d 1019, 1022 (1997) (citing ORS § 41.740, which provides that extrinsic evidence may be considered to explain an ambiguity).[41] The parties' intent is to

___

[41]Notably, the Ninth Circuit has held extrinsic evidence may not be examined to determine if there is an ambiguity in the first place, but may be used only as an aid in determining the parties' intent once the court has determined, from the text and context,

(continued...)

be pursued if possible. *Yogman*, 325 Or. at 364, 937 P.2d at 1022 (citing ORS § 42.240). Here, the parties have provided no extrinsic evidence of their intent. The court, therefore, must proceed to "the third and final analytical step," in which "the court relies on appropriate maxims of construction." *Id.*

If the disputed provision is ambiguous then, as "a basic tenet of contract law," the ambiguous language "is construed against the drafter of the contract." *Berry v. Lucas*, 210 Or. App. 334, 339, 150 P.3d 424, 427 (2006) (citing *Hill v. Qwest*, 178 Or. App. 137, 143, 35 P.3d 1051, 1054 (2001), in turn citing *Neighbors v. Blake*, 167 Or. App. 343, 347, 3 P.3d 172, 175 (2000)). Thus, Pittman argues he "is entitled to utilize any interpretation of the clause that is plausible," and Country can only prevail if it shows "its interpretation of the contract is the only plausible inter- pretation."[42] As discussed below, the court disagrees, and finds the disputed language is subject to only one "sensible and reasonable interpretation."

The parties have not cited any Oregon case interpreting language substantially similar to the "events giving rise to" language here. Indeed, the court has located very few cases from *any* court, federal or state, that provide examples of similar

---

[41](...continued)
that an ambiguity exists. *Webb v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 207 F.3d 579, 581-82 (9th Cir. 2000) (finding *Yogman* implicitly overruled the contrary holding in *Abercrombie v. Hayden Corp.*, 320 Or. 279, 883 P.2d 845 (1994)).

[42]Dkt. #22, p. 7 (citing *Hoffman Const. Co. v. Fred S. James Co.*, 313 Or. 464, 470-71, 836 P.2d 703, 706-07 (1992)).

language to assist in the interpretation of when the "events giving rise to" a claim begin.

In *McNeil v. United States*, slip op., 2012 WL 1415364, at *2 (Fed. Cir. Apr. 4, 2012), *reh'g en banc denied*, June 12, 2012, for purposes of when a claim must be brought in the Court of Federal Claims, the court, in *dicta*, equated "the events giving rise to [the plaintiff's] claims against [the defendants]" with the time a "claim first accrues." The court explained the six-year statute of limitations begins to run "when all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for his money[.]" *Id.* (internal quotation marks, citations omitted). Therefore, "the events giving rise to" the plaintiff's claims must have occurred within six years of the filing of his complaint. *Id.*

Several courts have considered the timeliness of claims for purposes of the six-year limitation period specified in section 15 of the National Association of Securities Dealers ("NASD") Code of Arbitration. Section 15 of the NASD Code of Arbitration contains language similar to that at issue here, to-wit: "'No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the *occurrence or event giving rise to* the act or dispute, claim or controversy.'" *Piccolo v. Fargalli*, 1993 WL 331933, at *2 (E.D. Pa. Aug. 24, 1993) (quoting § 15; emphasis added). In *Kidder, Peabody & Co. v. Brandt*, 131 F.3d 1001 (11th Cir. 1997), the court held "that the occurrence or event giving rise to a claim for purposes of § 15 of the NASD Code is the one necessary to make the

17 - MEMORANDUM OPINION AND ORDER

claim viable, the occurrence or event after which a complaint specifying the facts would withstand a Federal Rule of Civil Procedure 12(b)(6) motion." *Id.*, 131 F.3d at 1002.  The court noted that in some cases, "the last 'occurrence or event' necessary to make a claim viable depends on the nature of a particular claim." *Id.*, 131 F.3d at 1004.  For instance, sometimes a claim is established when a single, specific event occurs, such as when striking someone gives rise to a claim for battery. *Id.* In other cases, a course of events, or even several separate occurrences or events, will be required before a claim is viable. The court gave the example of a negligence action based on the defective design of a product, noting the action would not be viable until the product caused injury.  "Although the duty and breach elements of such a claim are established by the company's act of marketing the product, that act does not establish the causation and injury elements of the claim." *Id.*

Another example of how the facts of each case drive the determination of the date of the "occurrence or event giving rise to" a claim is illustrated by the contrast between claims for false arrest and malicious prosecution.  "For false arrest, the plaintiff can plead all elements [of the claim] on the day of the arrest regardless of later proceedings. . . .  For malicious prosecution, all the elements cannot be pled until the proceedings are ter-minated in the plaintiff's favor." *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) (construing Illinois law).

Interesting though these analyses may be, none of these cases provides definitive guidance in determining the point in time of the "events giving rise to" Country's claims against Pittman.

18 - MEMORANDUM OPINION AND ORDER

Similarly, the court finds the analyses in the attorney malpractice cases cited by the parties does not carry the day.  The court still must determine when all of the events had occurred that were neces- sary to fix Pittman's alleged liability sufficiently to allow Country to bring suit.  *See McNeil, supra.*

Pittman argues that under a statute-of-limitations analysis, the event giving rise to Country's claims was, at the latest, the date of the jury's verdict in the Stuart case.  Pittman notes Oregon recognizes a "discovery rule," pursuant to which the limitations period begins to run when a plaintiff knows, or has reason to know, of the elements of the claim.[43]  Pittman asserts that a "key component" of a statute-of-limitations analysis under Oregon law is that Oregon "does not require the setting of final damages for accrual of a claim."[44]  Pittman relies on *Bollam v. Fireman's Fund Ins. Co.*, 302 Or. 343, 353, 730 P.2d 542, 547 (1986), a case Country argues is distinguishable from the present case.[45]

In *Bollam*, the plaintiffs alleged their liability insurer had improperly handled a claim against the plaintiffs arising from an automobile accident.  The plaintiffs claimed their insurer's negli- gence in handling the claim caused them to incur liability for excess damages above their policy limits, and for attorney's fees to protect their interests.  The issue in the case was when the insureds' claim against the insurer arose, causing the statute of

---

[43]Dkt. #22, pp. 9-10.

[44]*Id.*, p. 10.

[45]*See* Dkt. #27, pp. 3-5.

19 - MEMORANDUM OPINION AND ORDER

limitations to begin to run.   The insureds argued their claim
against the insurer arose at the time they paid their own funds to
the claimant to settle the claim.   The insurer argued the claim
arose when the insureds became aware of their potential liability
above their policy limits, and as a result, incurred attorney's
fees to protect their interests.

The *Bollam* court "held that when the Bollams retained and paid
an attorney to protect their interests, the Statute of Limitations
began to run." *DeJonge v. Mutual of Enumclaw*, 90 Or. App. 533,
537, 752 P.2d 1277, 1279 (1988) (citing *Bollam*, 302 Or. At 353, 730
P.2d at 547).  Although "a cause of action for negligence does not
arise until the defendant's behavior has caused harm and resulting
damages to a plaintiff," *R.A. Hatch Co. v. American Insurance Co.*,
728 F. Supp. 1499, 1503 (D. Or. 1990) (Frye, J.) (citing *Bollam*,
302 Or. at 347, 730 P.2d at 544), "the statute of limitations
begins to run when an injured party discovers that he has been
harmed by the acts of the defendant even though the extent of the
injury is not yet known, and payment may not be made for some
time." *Id.* (citation omitted).  In *Jaquith v. Ferris*, 297 Or. 783,
687 P.2d 1083 (1984), the Oregon Supreme Court distinguished
between "two discrete concepts, the occurrence of harm and the
extent of damages," noting "'[i]t is immaterial that the extent of
damages could not be determined at the time of the [tort]' for
purposes of determining when the statute of limitation commenced to
run."  *Jaquith*, 297 Or. at 788, 687 P.2d at 1086-87 (quoting
*Industrial Plating Co. v. North*, 175 Or. 351, 354, 153 P.2d 835,
836 (1944)).  Thus, "[t]he critical focus is when damage first

occurred, not when the full extent of damage is identifiable."
*DeJonge*, 90 Or. App. at 537, 752 P.2d at 1279.

In the present case, Country asserts that the earliest it was
"damaged" by Pittman's conduct was the date judgment was entered in
the trial court - December 4, 2006. At that time, Country became
liable to pay either damages to Stuart or the costs of an appeal.
Thus, Country argues, "as a matter of law, [Country] had incurred
actionable harm by the time of the entry of the judgment."
*St. Paul Fire & Marine Ins. Co. v. Speerstra*, 63 Or. App. 533, 539,
666 P.2d 255, 258 (1983). Pittman, however, argues the latest date
when Country was harmed was the date of the jury's verdict.
Pittman notes that in a letter from Country's attorney to Pittman's
attorney dated March 7, 2007, Country acknowledged that it knew of
its claim against Pittman as of the time of the jury's verdict.[46]
In the letter, Country's attorney stated, among other things, the
following:

> . . . As you know, [Stuart] prevailed at
> trial. . . . The jury found that Mr. Pittman
> made promises to the insured to bind a type of
> insurance coverage that, to my knowledge, does
> not exist. Needless to say, it is not cover-
> age written by Country Mutual. . . . [W]e must
> now address responsibility for the judgment
> and the cost of appeal, as between the agent
> and the company.
>
> . . . .
>
> Country Mutual believes that the judgment
> is the ultimate responsibility of agent
> Pittman. Though I disagree with the jury's
> verdict, the jury made findings of fact that
> agent Pittman bound Country Mutual to coverage

---

[46]Dkt. #22, pp. 10-11 (citing Dkt. #23-11).

21 - MEMORANDUM OPINION AND ORDER

it does not write.[47]   As such, the agent is obligated to indemnify the insurer.   See, *United Pacific Insurance v. Price*, 39 Or App 705, 593 P2d 1214 (1979) and *Lynch v. First Colony Life Ins. Co.*, 108 Or App 159, 814 P2d 552 (1991).[48]

Thus, Pittman argues, Country knew as of the jury's verdict that it had a potential claim against him.   Pittman further argues it was the jury's verdict, not the formal judgment, that started the clock ticking; "[t]he judgment enforcing the verdict was merely a natural consequence of the jury's verdict."[49]

Pittman's position is unsupportable.   It is the judgment, when entered, that "[b]ecomes the exclusive statement of the court's decision in the case and governs the rights and obligations of the parties that are subject to the judgment[.]"   ORS § 18.082(a).   Country's liability to Stuart did not arise until the judgment was entered.[50]

---

[47]This is a misstatement of what the jury in the Stuart case found.   *See* Dkt. #20-5, Verdict form.

[48]Dkt. #23-11.   Although Country's attorney claimed Pittman was "obligated to indemnify the insurer," the *Price* and *Lynch* cases he cited actually hold an agent is liable in *negligence*, not indemnity, for the type of conduct alleged here.   As noted earlier in this opinion, Country now recognizes it has no indemnity claim against Pittman.

[49]Dkt. #22, p. 11 n.1.

[50]Indeed, in this case, the difference between the jury's verdict and the ensuing judgment is analogous to the order by the trial court judge in the Stuart case granting Pittman's motion for summary judgment.   No formal judgment ever was entered to memorialize that order; instead, the parties reached a settlement that resulted in Pittman's dismissal from the case.   Had the parties in the Stuart case reached a settlement of Stuart's claims after the jury rendered its verdict, but before the court entered
(continued...)

1    Pittman also argues Country knew of its claims against him,

2  triggering Country's obligation to demand arbitration, as early as

3  March 21, 2005, when Stuart's attorney wrote to Country's attorney,

4  stating Stuart "intended to hold Country liable for not issuing a

5  policy in conformance with Pittman's oral binder."[51] Pittman argues

6  Stuart's counsel reiterated, in a letter dated October 28, 2005,

7  that "Stuart intended to file litigation against both Pittman and

8  Country based upon Pittman's conduct."[52]  Indeed, when Stuart filed

9  his lawsuit, he included claims against both Country and Pittman,

10  and his claims against Country were based on Pittman's oral

11  representations. However, Country maintained throughout the Stuart

12  case that Pittman never made oral representations for any type of

13  insurance coverage other than what was provided in Stuart's

14  construction policy.[53]  Country defended against Stuart's allega-

15  tions, and advocated for Pittman's version of events, to which he

16  testified at trial of the Stuart case.  According to Country, it

17

18

19    [50](...continued)
20  judgment, the jury's verdict would have had no effect.

21    [51]Dkt. #22, pp. 11-12 (referring to Dkt. #23-5, letter dated
   March 21, 2005, from Arden J. Olson to John A. Bennett).

22
23    [52]*Id.* (citing Dkt. #23-6, letter from Arden J. Olson to an
   unknown recipient, referred to by Pittman's attorney as "Pittman's
   representative, with a copy to Pittman's attorney; *see* Dkt. #23,
24  ¶ 7).

25    [53]*See* Dkt. #27, p. 6 n.1, quoting language from Country's
26  motion for summary judgment in the Stuart case (Dkt. #23-15 in this
   case), where Country argued, "There is no evidence that [Stuart]
27  and Mr. Pittman agreed to a type of coverage other than that
   required by [Stuart's] construction contract," and "no enforceable
28  binder insurance contract exists."

23 - MEMORANDUM OPINION AND ORDER

relied on Pittman's testimony both at trial and during the appeal.[54]
Thus, simply being put on notice of Stuart's claims against Country
and Pittman was not enough to establish harm to Country
sufficiently to trigger the one-year period within which Country
had to demand arbitration.

The court finds the "event[] giving rise to" Country's claim
against Pittman, and therefore triggering the one-year time limit
for Country to demand arbitration, was entry of the judgment in the
Stuart case on December 4, 2006; and further, this is the only
sensible, reasonable, plausible interpretation of the language of
the arbitration clause.[55]  Less than one year later, the parties
entered into the Tolling Agreement that stopped the "passing of
time, as to any contractual or statutory period of limitation
applicable to Country Mutual's proposed claims against Pittman,
. . . until 30 days after the final decision and mandate of the
appellate courts[.]"[56]  Within 30 days after the Oregon Supreme
Court entered final judgment in the Stuart case, Country made its
written demand for arbitration.  Country complied with the time
limitation specified in the arbitration clause of the Agent's

---

[54]*See* Dkt. #19, p. 4.

[55]The court is not persuaded that Pittman's supplemental
authority, *see* Dkt. #38 (citing *Dial Temporary Help Service, Inc.
v. DLF International Seeds, Inc.*, ___ P.3d ___, 252 Or. App. 376
(Sept. 26, 2012), changes this conclusion.

[56]Dkt. #23-12, Tolling Agreement, p. 1.

24 - MEMORANDUM OPINION AND ORDER

Agreement.[57]   As a result, Country's claims are timely, and Pittman's motion for summary judgment is **denied**.

## COUNTRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Country moves for summary judgment on its First Cause of Action for negligence.[58]   Country argues "Pittman is bound by the jury's findings and the circuit court and appellate court judgments under Oregon's issue preclusion rules."[59]   The parties agree that in this diversity action, Oregon law applies to the court's analysis of the preclusive effect, if any, of the judgments in the Stuart case.[60]

For the elements of issue preclusion, both parties cite *Nelson v. Emerald People's Utility District*, 318 Or. 99, 914 P.2d 697 (1996).  In *Nelson*, the Oregon Supreme Court considered whether "an unemployment compensation decision by the Employment Division should be given preclusive effect in a subsequent civil action." *Nelson*, 318 Or. at 101, 862 P.2d at 1295.  The court explained that "[i]ssue preclusion arises in a subsequent proceeding when an issue

---

[57]Indeed, Pittman's position raises a question as to his motivation for entering into the Tolling Agreement in the first place.  If Pittman's position were correct, then by the time the tolling Agreement was executed, there was nothing to toll, as one year from the date of the jury's verdict had long since passed, and it had been even longer since Stuart initially raised his claims.  Thus, if Pittman's position were correct, the court is left to wonder why he did not take that position instead of agreeing to the Tolling Agreement.

[58]Dkt. #19.

[59]Dkt. #19, p. 9.

[60]*See id.*; Dkt. #28, p. 10.

25 - MEMORANDUM OPINION AND ORDER

of ultimate fact has been determined by a valid and final deter-
mination in a prior proceeding." *Id.* (citations omitted).  The
court specified five requirements that must be met for a decision
in one tribunal to preclude relitigation of the issue in a subse-
quent proceeding, to-wit:

> 1.  The issue in the two proceedings is iden-
>     tical.
>
> 2.  The issue was actually litigated and was
>     essential to a final decision on the
>     merits in the prior proceeding.
>
> 3.  The party sought to be precluded has had
>     a full and fair opportunity to be heard
>     on that issue.
>
> 4.  The party sought to be precluded was a
>     party or was in privity with a party to
>     the prior proceeding.
>
> 5.  The prior proceeding was the type of
>     proceeding to which this court will give
>     preclusive effect.

*Nelson*, 318 Or. at 104, 862 P.2d at 1296-97 (citations omitted).

The parties agree as to which party bears the burden of proof
on each of these elements.  Country has the burden, initially, of
proving elements 1, 2, and 4.  The court first addresses whether
the identical issue was decided in a previous action, and "was
necessary to the judgment in the prior action."  *Barackman v.
Anderson*, 214 Or. App. 660, 666, 167 P.3d 994, 999 (2007) (citation
omitted).  "Whether the issues are identical and whether a par-
ticular matter was actually decided are questions of law for the
court."  *State Farm Fire & Cas. Co. v. Century Home Components,
Inc.*, 275 Or. 97, 104-05, 550 P.2d 1185, 1188-89 (1976) (citation
omitted).  The *Century Home* court further explained:

> Once the court has concluded that the evidence
> is sufficient to establish that an identical
> issue was actually decided in a previous
> action, *prima facie* the first judgment should
> be conclusive.  The burden then shifts to the
> party against whom [preclusion] is sought to
> bring to the court's attention circumstances
> indicating the absence of a full and fair
> opportunity to contest the issue in the first
> action or other considerations which would
> make the application of preclusion unfair.

*Id.* (internal quotation marks, citations omitted).  The *Barackman* court noted that although the *Century Home* court did not expressly say so, "the party asserting issue preclusion also bears the burden on the fourth *Nelson* factor" – the privity issue.  *Barackman*, 214 Or. App. at 667, 167 P.3d at 999 (citation omitted).

Thus, the court's first task is to determine whether Country has met its burden to prove elements 1 and 2.  The issue on which Country claims it is entitled to summary judgment in the present case is Pittman's negligence.  In support of its claim that Pittman was negligent, Country asserts the following facts:

a.    Pittman promised Stuart, and bound Country, to provide coverage that "does not, and has never, existed."[61]

b.    Pittman failed to communicate accurately to Stuart what was covered under, and what was excluded from, Country's course-of-construction policy.[62]

---

[61]Dkt. #9, Amended Complaint, ¶ 25.

[62]*Id.*

27 – MEMORANDUM OPINION AND ORDER

    c.    Pittman's representations to Stuart altered the risk Country was willing to take, and promised coverage Country was not willing to provide.[63]

    d.    Pittman had a duty, as Country's agent, to protect its interests, bind only coverage Country provided, and not waive any of Country's policy provisions.[64]

    e.    Pittman "had a duty to timely mail or deliver Stuart's course-of-construction policy to him." Any delay in delivery of the policy to Stuart was due to Pittman's actions.[65]

    f.    Country sustained damages due to Pittman's negligence in binding Country to coverage it did not provide, and in failing to deliver Stuart's policy to him in a timely manner.[66]

Contrast the above with what the jury found in the Stuart case:

    1.    Pittman "enter[ed] into an oral contract of insurance different than the policy later issued by Country Mutual[.]"[67]

    2.    The oral contract of insurance eliminated any requirement of direct physical loss, and exclusions for damage by mold, water (whether or not backed up

---

[63]*Id.*

[64]*Id.*, ¶ 26.

[65]*Id.*, ¶ 27.

[66]*Id.*, ¶¶ 28 & 29.

[67]Dkt. #20-5, Verdict form, Question 1.

28 - MEMORANDUM OPINION AND ORDER

through drains), and faulty workmanship or con-
struction.[68]

3.    Stuart was damaged by Country's "failure to provide
insurance coverage consistent with the oral con-
tract of insurance[.]"[69]

4.    Country "fail[ed] to mail or deliver the policy
within a reasonable time[.]"[70]

5.    Stuart was damaged in the amount of $268,417 by
"the failure to mail or deliver the policy within a
reasonable time[.]"[71]

In its brief, Country indicates it "anticipates that Pittman
will agree that the issue in the two proceedings (that Pittman made
an oral insurance binder to Stuart and failed to timely provide the
written policy) is identical, and that the issue was actually
litigated and essential to a final decision."[72] Country, therefore,
devotes its argument to the element of privity.[73]   However,
Country's assumption was erroneous; Pittman argues the issues *were*
*not* identical.[74]   Comparing the issues decided by the Stuart jury
with those pled by Country in the present case shows how the issues

[68]*Id.*, Question 2.

[69]*Id.*, Question 3.

[70]*Id.*, Question 4.

[71]*Id.*, Questions 5 & 6.

[72]Dkt. #19, p. 10.

[73]*See id.*, pp. 10-12.

[74]*See* Dkt. #28, pp. 12-15.

29 - MEMORANDUM OPINION AND ORDER

differ.  At issue in the Stuart case, according to the questions on the Verdict form, was whether the oral contract of insurance Pittman bound was "different than the policy later issued by Country Mutual."[75]  In the present case, the issue as pled by Country is whether Pittman orally bound coverage that "does not, and has never, existed."[76]  These issues are not identical.

Country states the second issue as whether Pittman "failed to timely provide the written policy."[77]  Again looking to the Verdict form, the issue in the Stuart case was whether <u>Country</u> failed to make timely delivery of the policy.[78]  The issue of whether it was Pittman, or some other Country employee, who failed to deliver the policy was not decided in the case.

Oregon law provides that the only matters considered to be "determined by a former judgment" are those that "appear[] on its face to have been so determined or which [were] actually and necessarily included therein or necessary thereto."  ORS § 43.160. In relying on the jury's verdict and the Oregon Supreme Court judgment in the Stuart case, Country "must take for better or for worse the adjudicated facts upon which it rests."  *Jarvis v. Indemnity Ins. Co. of N. Am.*, 227 Or. 508, 512, 363 P.2d 740, 742 (1961) (citing *Am. Surety Co. of N.Y. v. Singer Sewing Mach. Co.*, 18 F. Supp. 750, 753-54 (S.D.N.Y. 1937)). Country alleges Pittman issued an oral binder for a type of coverage that "does not, and

---

[75]Dkt. #20-5, Question 1.

[76]Dkt. #9, ¶ 25.

[77]Dkt. #19, p. 10.

[78]Dkt. #20-5, Question 4.

30 - MEMORANDUM OPINION AND ORDER

has never, existed"[79]; Pittman did not accurately communicate the available coverage to Stuart[80]; and Pittman's representations to Stuart altered the risk Country was willing to take, and promised coverage Country was not willing to provide.[81] The jury in the Stuart case found Pittman had entered into an oral contract of insurance that differed from "the policy later issued by Country,"[82] specifically by eliminating certain requirements and exclusions that the policy Country issued actually contained.[83] The jury's findings do not match Country's allegations in this lawsuit. The jury made no finding regarding whether the type of insurance Pittman described to Stuart exists, or ever has existed, nor did the jury make any finding as to whether Pittman accurately represented a type of coverage that actually was available from Country. The jury simply found Pittman had made certain representations, and the policy issued by Country did not match those representations, damaging Stuart. Further, the Stuart jury made no findings at all regarding <u>Pittman's</u> failure to timely deliver the policy to Stuart.

Similarly, determinations regarding the contractual relationship between Country and Pittman, Pittman's duties and obligations to Country, and whether those duties and obligations were breached, were neither included in the jury's verdict in the Stuart case, nor "necessary thereto."

---

[79]Dkt. #9, ¶ 25.

[80]*Id.*

[81]*Id.*

[82]Dkt. #20-5, Question 1.

[83]*Id.*, Question 2.

31 - MEMORANDUM OPINION AND ORDER

On this record, all of these matters constitute genuine issues of material fact in the present case that preclude summary judgment. Accordingly, Country's motion for summary judgment is **denied.**[84]

### *CONCLUSION*

For the reasons discussed above, Country's motion for summary judgment (Dkt. # 18) is **denied.** Pittman's motion for summary judgment is **granted** as to Country's Second Cause of Action for common-law indemnity, but is **denied** to the extent he argues Country's claims are untimely.

IT IS SO ORDERED.

Dated this 16th day of November, 2012.


   /s/ Dennis James Hubel
Dennis James Hubel
Unites States Magistrate Judge

---

[84]The court does not reach the issue of privity, because the court has found the issues in the two cases were not identical. *See Century Home*, 275 Or. at 104-05, 550 P.2d at 1188-89.

32 - MEMORANDUM OPINION AND ORDER